Mr. Hillis is going to argue remotely, and we have Mr. Wrights here. Mr. Hillis, we've called the case, and we're going to begin with you. May it please the court, appreciate you letting me appear remotely today on short notice. We hope you're feeling well. Thank you. I am. Thank you, Judge. My name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Mr. Jackson. Every criminal defendant has a due process right to be sentenced on the basis of accurate information. The district court in this case relied on inaccurate information when it imposed sentence on Mr. Jackson because it said that the evidence showed a testimony of the CSI was of a minimum purchase of one-half pound quantities of methamphetamine from Mr. Jackson. At Trott, and that was appendix page 19, the district court said that. But importantly, Mr. Blythe, the CI, testified that he made minimum buys not of one-quarter pound, excuse me, of one-half pounds, but of one-quarter pounds. That is to say four-ounce quantities were the minimum purchase. That establishes a reliance on incorrect information for the imposition of sentence by the district court, and that due process error warrants resentencing under Tucker, Townsend, Helding, U.S. Exwell, Relch, a large number of both Supreme Court and Seventh Circuit precedent. So for that reason alone, we believe it is appropriate to vacate and remand for resentencing due to the due process error that occurred by comparing the testimony of the CI on appendix page 19, or excuse me, appendix page 1, with the district court's conclusion on appendix page 19. A related problem is that the district court's summary determination of the methamphetamine quantity occurred here. And so under Beeler, which is a Seventh Circuit case, a district court must scrutinize the drug quantity evidence when imposing sentence. There was inconsistent information here about the minimum purchase of meth from Mr. Blythe. It appeared to be a matter of faulty recollection by the agent. Agent Bevington testified at the sentencing hearing that as the handler for Mr. Blythe, his recollection was that there are one-half pound minimum purchases. But again, we just need to look to the testimony of the CI. The CI is the source of all information for the agent in this regard for the quantity. So the CI knows more than the agent, and when the agent is recapping what the information is from Mr. Blythe, it appears that the agent simply misrecalled what the minimum purchase would be, given that the testimony clearly said one-quarter pound at trial. Mr. Hillis, why wasn't the agent's testimony just an elaboration on the CI's trial testimony, based on his discussions with the CI? Well, it's unsupported in the record for the testimony. It's contrary at the very least. And so we can't have an agent. I think it would be generous to call it an elaboration. It would be a whole new number. It is not explained how you jump from the quarter pound to the half pound. It's the government's burden to establish the quantity, as just recently discussed in the prior case or argued in the prior case. The government's burden here was to come in with that evidence in Judge St. Eve, and it didn't do that. It seems to be a disconnect between the agent's recollection and the actual testimony. There's no corroborating information, incidentally, Judge St. Eve. So if we're to say that this is just an elaboration, what are the facts that allowed the agent to make that elaboration? Where is the 302 report or anything similar to document that I had a discussion of this type, and here's what the information was, this date, this time? Those are the particulars that we'd want to see to make certain that it wasn't just a mistaken recollection by the agent who then provided the information to the district court and the district court relied on it. We need to make certain that the information is correct and supported, and in the record that we have here, it's not. So I think that's the problem. Mr. Hillis, one argument that could be offered on the other side is that all roads here lead to the same offense level. What is your response to that? That's very true. They might, but it's a due process problem. It's a constitutional problem, not a guideline problem. So pre-Booker, we might say the government gets here, and even then, we would say, but nevertheless, Tucker, Townsend, U.S. Exwell, Relch held some more recent decisions, but that does not obviate the due process error that occurs here. So even if you were to say, look at all the other testimony, and it tells us that we're at a total adjusted offense level 32, that's fine, but that does not take away the due process error that under all the cases that I mentioned would warrant and require resentencing here because Judge Brennan is from district, rather state court in Milwaukee area. You would recognize, I think, that if you think that somebody sold a minimum quantity of a half pound of methamphetamine, that person's conduct may be more egregious, more reprehensible, and more blameworthy for purposes of imposing sentence than somebody who sold half that quantity. So a quarter pound versus a half pound minimum purchase could factor significantly into a judge's ultimate sentencing decision, and that's why the due process problem, which we can't back out of the analysis because we don't know how it impacts the judge's imposition of sentence, that's why that becomes so critical and warrants the relief that we've sought here. The district court simply didn't notice the difference between the two amounts, and the government says, well, the district court surely would know because it presided over the case and then it imposed the sentence, but I've worked in clerk for about five different district court judges. Some of them had really outstanding memories. I don't know anybody who had total recall, and so an important detail like this has to at least be accounted for, recognized by the district court if we're to ultimately accept what the conclusion is for the quantity. There should be something on the record to say, I appreciate there was testimony about a lower quantity. The agent's testimony is to a higher quantity. I find for the following reasons, X. Then we're in a different place than we are here on this record. But the impact on the guidelines, judge, whether we get to the same quantity, does not take away the due process error that occurred here. So that's my answer on that part. If the court has questions on anything else, I'm happy to answer. Otherwise, I've reserved the balance of my time. Very good. That time will be reserved, and Mr. Reitz, we'll move to you. May it please the court, Brian Reitz for the United States. I want to start, Judge Brennan, with your question that all roads lead to the same offense level, and that's certainly the case here. In fact, I think to get below offense level 32, the court would have had to totally ignore all the sentencing testimony and then take the trial testimony in an almost unreasonably narrow manner. So starting with the sentencing testimony, the officer testified that Mr. Jackson sold Mr. Boliath 10 to 20 times drugs, and it was half a pound to a pound. The minimum there is 5 pounds, which easily exceeds the 3.3-pound threshold for offense level 32. So any reliance which a district court did rely on the testimony at sentencing gets Mr. Jackson to offense level 32. The district court did not ignore or discredit that testimony, nor should this court. Now, even if it were, if we just looked at the trial testimony, so Mr. Boliath said that he bought drugs from Mr. Jackson several times, and more than once was one pound, and we also know there is the 4-ounce initial purchase. So if several means only three or four total purchases, then we're below 3.3. If it's four, then we're at 3.25. That's, of course, also ignoring the amount sold to Ricky, but when you put that combination together, the testimony at the trial and sentencing, the amount clearly exceeds the 3.3. As to the due process concern, the testimony is not contradictory. Mr. Boliath testified that the first purchase was four ounces, and then after that he purchased up to a pound. The testimony at sentencing explained the usual amount, usual amount, was half pound to one pound. Not that every purchase was at least half a pound, that the usual amount was a half a pound to a full pound. So those statements are not contradictory. I want to, because it was touched on in the reply brief, I want to mention the discovery. We take our discovery obligations very seriously, and we did turn over the ATF report from Mr. Blythe's proffer, and that proffer, which occurred about a month after Mr. Blythe's arrest, I guess I should preface it, this is not in the record, but Mr. Jackson brought up our discovery obligation. So I think it's fair ground to respond to that. In that report, Mr. Blythe said that he bought drugs from Mr. Jackson 10 to 20 times, and the average amount over those times was half pound up to two pounds. We found the two pound to be something of an outlier, so we focused on the half pound to one pound, but we did provide that information to Mr. Jackson's attorney below. Second other point. Mr. Weeks, with regard to the point you made about the trial testimony, I'm looking at page 2-170 of the testimony, and the question was what did you usually obtain in terms of the amount of methamphetamine when you did buy methamphetamine from the defendant? And the answer was a minimum of four ounces, but up to a pound, I can't recall, every time. So at least in that exchange, the witness talks about what he usually bought as a minimum of four ounces, right? I think the best way to read that is just him saying the minimum to the highest. So it's right, it's correct that the lowest he purchased was four ounces, but that doesn't mean that was the minimum range. Well, I'm just pushing back on your statement before, and you said in his testimony, and he does earlier, he says on his first occasion four ounces, but later on he is asked what do you usually get, and he says, well, a minimum of four ounces up to a pound. So I'll just step back, and if Your Honor thinks that's the best way to read that. So what we have is ten purchases. Mr. Bly said that two of them were a pound, so we're at two pounds. If all the other eight purchases are just that four ounces, four ounces is a quarter of a pound, that's two pounds and we're at four pounds. So even if the court reads that testimony in that manner, we're still at four pounds, and all roads lead to that offense level of 32. And you don't think that the district court sentencing was somehow based upon the ten pounds versus a lower calculation, that the actual amount of the drugs that were at issue was something that the district court considered an important factor in sentencing? Yeah, the district court considered an important factor and took the testimony in front of her, which was, I mean, mostly undisputed that it was a half pound to a pound. But even if we're going for the four ounces, we still clear that offense level 32 threshold. Now, that said, it is true that the judge, in trying to find the most conservative amount, I think overstated. She said that the conservative amount from the agent's testimony was ten pounds when it actually was five pounds. But either way, five or ten pounds exceeds the relevant threshold. And I guess my question is, even though it might end up with the same sentencing guidelines, what are we to make of the fact that at least the district judge, in the sentencing transcript on page 50, indicated that, clearly, that the fact that it was ten pounds was something that she considered as part of the sentencing versus any lower amount? Whatever mistake in the math did not impact the guideline range, and I think that's really what the appeal is. We don't have a sentencing unreasonableness claim. It's all about the guidelines. And whether the judge said five or ten pounds puts Mr. Jackson in the same guideline range. So there's really no guideline error, ultimately, even if the judge overstated what was the most conservative amount, which, again, we agree that's right, but the most conservative amount is still offense level 32. So it's, I suppose, an error without any harm. And before I sit down, I want to stress, too, that there's no inaccurate information. I mean, there may be some inconsistent testimony of Mr. Blyspart at best, but drug quantity calculations are an inexact science. And the fact that everybody is not exactly precise on every single amount doesn't make the information inaccurate. This is pretty typical for drug quantity calculations like we talked about or the court talked about in the last argument. We have guesses or estimations based on I bought drugs this many times. It was usually this amount. That is naturally imprecise, which is not problematic for the guidelines, but that's not inaccurate. So if the court has no further questions, we'd ask to defer. Thank you, Mr. Reitz. Mr. Hillis, we'll move back to you now for rebuttal. Thank you. This case is not all about the guidelines. It's not all about how to calculate enough to get over a guideline threshold for purposes of imposing sentence. My brief focuses primarily on the due process error. It was the government's effort to recast the issue to avoid a remand by calling this a guideline incident without remedy. So that is not the correct framing of the issue, in our opinion. We don't know how the error impacts the sentence that's imposed here. The proffer report is not in the record. The government says much about its discovery practices and disclosures. We're not calling those into question. We're not saying the government didn't tender those things to defense counsel. I don't know what's in there because it's not in the record, and I'm in the same position that you three judges are. So if it's not in the record, we can't rely on it to disambiguate or clarify anything at all. We're simply saying that the report, whatever it is, isn't there for us to rely on. We don't know what the information is beyond what the government says that it is. If the government wished to clarify and use the report, it could have tendered it, it could have offered it into evidence. It never did. So I always bristle a little bit about the government relying on facts beyond the record because we are not in the trial court. The government is. We pick up the case on the appeal, and we don't have all of that information. We're much in the position that you three judges are not having that information to try to figure out how it affects the sentence. I'd say put that information out of the question. Don't consider it because it's not properly before this court since it's not part of the record. There is no effort under Rule 10 to supplement the record in any fashion to say under Federal Rule of Procedure 10, this information can be considered for the following reasons. It's a real item of the district court. And of course it wasn't because it was never offered by the government who had the sole ability at that moment to offer that to the district court. It chose not to. So ultimately, is there a problem between the half pound and the quarter pound? Yes, because one is twice the amount of the other. The district court focused on what the total quantity was, not just for purposes of the guideline,  but also for the purpose of the case.  There is a problem with the sentence. It's a case that is fair and warranted under the facts of this case. And we're not accounting for the difference between Blythe's testimony at trial and under oath, with the agent's later testimony at sentencing and account for that disconnect. We are skating past if we follow the government's recommended course, a due process problem that has potentially affected my client's sentence when he got the 240 months, 180 of those months are attributed to the drug quantity calculations. And the amount may have been consistently less than what the judge was led to believe by the agent's testimony. And again, not discrediting the agent. There's simply a lot of information to recall. And if somebody doesn't go back and look at the transcripts and present that information to the district court, they may be apt to tell the district court something that's incorrect as the agent did here. That does not mean that a defendant should suffer the consequences. We ask that you vacate and remand. Thank you, Mr. Hillis. We hope you feel better. Thank you very much, Mr. Rights. The case will be taken under advisement.